**2010 BNH 015**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE


| | |
|---|---|
| In re: | Bk. No. 07-10266-JMD |
| | Chapter 11 |
| Total Pride Landscaping, Inc., | |
|       Debtor | |
| | |
| Total Pride Landscaping, Inc., | |
|       Plaintiff | |
| | |
| v. | Adv. No. 08-1084-JMD |
| | |
| Continental Paving, Inc. and | |
| Richard Charbonneau, | |
|       Defendants | |

*William S. Gannon, Esq.*
*William S. Gannon, PLLC*
*Manchester, New Hampshire*
*Attorney for Debtor/Plaintiff*

*Paul M. DeCarolis, Esq.*
*Gottesman and Hollis, PA*
*Nashua, New Hampshire*
*Attorney for Defendants*

## MEMORANDUM OPINION

### I. INTRODUCTION

      This is a case about a pile of compost. Total Pride Landscaping, Inc. (the "Debtor" or "Total Pride") filed this adversary proceeding under § 542 of the Bankruptcy Code[1] to recover a

---

[1] In this opinion the terms "Bankruptcy Code," "section" and "§" refer to title 11 of United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8.

large pile of organic compost, or loam, that sits on land owned or operated by Continental Paving, Inc. and Richard Charbonneau, the vice president of Continental (the "Defendants"). Total Pride also sought damages under § 362 against the Defendants for violating the automatic stay because they refused to allow Total Pride access to the land so it could remove the compost. The Defendants counterclaimed for rent for the period in which the Debtor used the property to store the compost.

The parties attempted to settle this case by allowing Total Pride to remove the compost by accessing it through a neighboring property owned by a third party and requiring Total Pride to restore any disturbed land. Things did not go as planned, however, because the Defendants disputed the manner in which Total Pride tried to remove the compost. Based on that dispute, the Defendants sued Total Pride and its president, Kevin Landry, in Hillsborough County Superior Court for timber trespass under N.H. Rev. Stat. Ann. ("RSA") § 227-J:8. Both parties later sought to transfer and consolidate that case with this adversary proceeding. After briefing from the parties, the Court found that it had "related to" jurisdiction over the state court case, and it granted their motion to consolidate (Doc. No. 45). Though the Defendants never amended their answer to include the trespass claim, by agreement, that claim became the Defendants' additional counterclaim. The Court held a trial on January 15, 2010, after which it took the matters under submission and gave the parties time to file post-trial motions.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

Continental Paving owns about forty-eight acres of land on West Road in Hudson, New Hampshire, where it conducts its business.  The back portion of Continental's land abuts the back portions of two other commercial properties owned by other entities—Fleet Ready Corporation and Bel-Mor.

Sometime in 2006, Charbonneau and Landry agreed to allow Landry to use a back corner portion of Continental's property to store its compost pile, which was generated from Total Pride's landscaping business.  Landry was allowed access over the Continental property for dumping and storing the compost and some other debris.  In exchange, Landry occasionally did some seeding for Continental or provided landscaping services on other projects.  The Defendants estimated that the value of Landry's services to Continental equaled the fair rental value of Continental's property used by Landry—about $500 per month.

Total Pride also had a previous lease arrangement with Fleet Ready that allowed it to store piles of some of its landscaping products on Fleet Ready's property, close to the boundary with Continental's property.  The distance from the Fleet Ready property line to the compost pile sitting on Continental's property is about 100 to 150 feet.  In late 2006 or early 2007, Total Pride's lease to use the Fleet Ready property expired, and it vacated that property.  Sometime during this period, Landry apparently pushed the compost pile on to Continental's property and he continued to have access to the compost (through Continental's property) until about April 2007.[2]  Around that time, Charbonneau told Landry that he was having problems with the way that Landry performed work for Continental's customers and that he broke business promises

---

[2] The Debtor filed its chapter 11 bankruptcy on February 9, 2007.

with those customers.  Charbonneau then refused to provide Landry with access over Continental's property to get to the compost.  In an effort to get the compost back, Landry said he called Charbonneau several times but did not receive any response.

      The Debtor filed this adversary proceeding in June 2008.  The Court entered a pretrial scheduling order and a trial was scheduled for March 2009.  The trial was continued several times, however, so the parties could attempt to settle the case.  During the summer of 2009, the parties nearly reached a full settlement.  Although the exact terms were never finalized, the parties seemed to agree that Landry could remove the compost pile from Continental's property by accessing it through one of the other properties abutting the land—either over Fleet Ready or Bel-Mor's property.  Landry was also required put the land back to its original condition, remove any other debris, replace any disturbed soil (though the parties never agreed on how much), and seed the new soil.  Charbonneau also wanted Total Pride to obtain a certificate of insurance and finish the entire process within sixty days.  Landry provided the certificate of insurance and was ready to start the removal process.  He first expected to cross over the Fleet Ready property to get to the compost.  He called the owner or manager of Fleet Ready several times, but his calls were never returned.  Charbonneau said he also asked Fleet Ready if Landry could cross its property to get the compost but Fleet Ready refused.  Landry then asked Bel-Mor for access over its property, and Bel-Mor agreed, though there was no logging road to Continental's property through Bel-Mor's property.

      On April 30, 2009, Landry started the removal process.  Because the access road was not a normal logging road fit for trucks and equipment, Landry bought gravel and top-coated the road in the back portion of the Bel-Mor property.  Before entering Continental's property,

Landry found what he believed to be a granite corner marker which indicated the meeting point of the three adjoining boundary lines for the Continental, Bel-Mor, and Fleet Ready properties. To create the road and make room for his equipment, Landry testified that he then cut two small trees on the Bel-Mor property, one measuring between six to eight inches in diameter and another between two to three inches in diameter. These trees (and the other disturbed land) fell within a buffer zone between the Bel-Mor and Continental properties.

Sometime that same day, Charbonneau showed up and became upset with how Landry was doing the removal process. He said he saw Landry with his backhoe and screening[3] equipment on Continental's property and several trees were cut down, which Charbonneau believed were on Continental's land. Charbonneau then called the local police, asking them to remove Landry and his equipment from the land. After the police arrived and spoke with the parties, Landry moved his equipment back on to the Bel-Mor property and the police took no further action. Both parties took several photographs, introduced as exhibits at trial, which show the disturbed area, the surrounding land, and the compost pile.

At trial, Total Pride called two third parties that witnessed the April 30, 2009 incident. Edward Ball, a truck driver that sometimes works for Landry, testified that Landry cut down about two to three trees that sat on Bel-Mor's property while he was preparing the road for his equipment to remove the compost. Kenneth Moore, a mechanic for Landry, also testified that Landry cut about two to three trees that sat on the Bel-Mor property. Moore estimated that one of the trees was about eight inches in diameter and the other was about two to three inches in diameter. Both Ball and Moore identified a marker on the left side of one of the trees as marking

---

[3] "Screening" refers to the process by which soil is filtered of debris like roots, rocks, and leaves. Screening produces a richer soil product.

5

the property line between Continental and Bel-Mor's lands.[4]  Though he was not present on April 30, Continental's surveyor, Christopher Basso, disputes that the cut trees were on the Bel-Mor property and the number of trees cut down.  He testified that about seven trees were cut down recently, one large one and the rest rather small.  He also testified that there were no property line markers and no cleared path or road between the Continental and Bel-Mor properties.  Although Charbonneau did not witness Landry cutting down trees, he claims that Landry removed brush, disturbed soil, and destroyed several trees on Continental's property worth about $6,400.00.  In total, Charbonneau argues that the cost to restore the area would be $26,404.46, which includes $752.00 to restore portions of Bel-Mor's property to prevent runoff and erosion on to Continental's land.[5]

The parties dispute both the value and size of the compost pile.  The Defendants place a lower value on the compost pile than the Debtor.  Basso inspected the pile and estimated that it included about 1,850 cubic yards of material.  The Defendants believe that the pile is composed of about 70% unsifted loam, some of which belongs to them because the pile includes the original topsoil generated by Landry when he removed stumps from the area (back when he had permission to use Continental's land).  The Defendants argue that Total Pride has not established what portion of the pile it owns.  In addition, the Defendants point out that Landry testified that the pile originally stored on Fleet Ready's property was pushed on to Continental's property after Landry sold 2,200 cubic yards of the original pile to a construction company, Pro Con, in May 2005 for only $4.00 per cubic yard, or $8,800.00 total.

---

[4] Def.'s Ex. 101-A.

[5] Def.'s Ex. 105.

Not surprisingly, Landry places a different value on the pile. He testified that screened loam has a delivered, fair market value of $22.00 to $40.00 per cubic yard depending on the amount purchased by a buyer and unscreened loam has a delivered, fair market value of $19.00 to $35.00 per cubic yard. Organic compost, on the other hand, has a fair market value of $33.00 per cubic yard. Landry testified that the pile at issue includes about 3,500 to 4,000 cubic yards of material. Based on those minimum and maximum value and volume estimates, Landry says the compost is worth between about $65,000.00 and $140,000.00.

### III. DISCUSSION

#### A. The Debtor's claims

##### 1. Turnover under 11 U.S.C. § 542

Total Pride seeks an order requiring the Defendants to turn over the compost pile under § 542 because the pile is property of the estate under § 541, as it was listed in the Debtor's original schedule B. In the alternative, Total Pride wants the Defendants to pay for the fair value of the compost pile. The Defendants deny that the pile is property of the estate because it was not listed in the original schedule B and was only included in an amended schedule B on June 18, 2008, after the Defendants' counsel requested a copy of the original.

###### a. Section 542(a)

Section 542(a) provides:

> any entity, other than a custodian, in possession, custody, or control during the case of property that the trustee may use, sell, or lease under section 363 . . . or that the debtor may exempt under section 522 . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

7

11 U.S.C. § 542(a). In other words, section 542(a) "requires everyone holding property of the estate on the date of filing from which the trustee may benefit the estate under § 363 to deliver the property to the trustee." Braunstein v. McCabe, 571 F.3d 108, 116 (1st Cir. 2009). Congress put § 542(a) in the Bankruptcy Code

> to expand the trustee's power to "bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced," ensuring that a broad range of property is included in the estate in order to promote the congressional goal of encouraging reorganizations.

Id. (quoting United States v. Whiting Pools, Inc., 462 U.S. 198, 205 (1983)). Property of the estate is defined under § 541(a) to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a).

The Defendants rightly point out that the compost pile was not listed on original schedule B and was only added much later on June 18, 2008, the same day Total Pride filed this adversary proceeding. But a debtor's failure to list an asset on its original schedules does not prevent that omitted property from becoming property of the estate. United States v. Shadduck, 112 F.3d 523, 528 (1st Cir. 1997) (all property of the debtor becomes property of the estate, even if not listed on schedules). Moreover, Federal Rule of Bankruptcy Procedure 1009 gives debtors a general right to amend schedules "as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a). The Defendants do not suggest that the Debtor's later amendment to schedule B to list the compost pile was done in bad faith, and they presented no such evidence. Accordingly, the Court finds that the compost pile, or loam, is property of the Debtor's estate under § 541 and subject to turnover under § 542.[6]

---

[6] The Defendants made an argument that they owned some of the loam pile. The testimony though focused on the volume of the loam pile and its market value. The Defendants did not submit sufficient evidence to prove what portion of the pile, if any, they owned.

### b. Value or benefit to the estate

The Defendants also argue that the pile is of inconsequential value or benefit to the estate, so that turnover is not required based on the exception in § 542(a), which provides that property need not be turned over if it "is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). "This language should be interpreted to excuse turnover only if the property is of both inconsequential value and inconsequential benefit to the estate." 5 Lawrence P. King, Collier on Bankruptcy ¶ 542.02[2], at 542-12 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. 2009) (emphasis in original). "Thus, property of little value but of great benefit to the estate should be turned over." Id.; see Alpa Corp. v. I.R.S. (In re Alpa Corp.), 11 B.R. 281, 290 (Bankr. D. Utah 1981). "[I]f there is any value or benefit to the estate in receiving the property, turnover must be made if the interest of the creditor in the property to be turned over is adequately protected." 5 Collier on Bankruptcy ¶ 542.02[2], at 542-12.

After considering the testimony and evidence, the Court finds that the compost pile has more than inconsequential value or benefit to the estate. Though the Debtor may incur costs to filter and remove the pile and to replace the disturbed area on the Defendants' property, the pile has some value or benefit to the estate. The evidence was inconsistent on this point. Jeff Lynch, the Defendants' own expert called to testify on the cost to reclaim the disturbed area, testified that the disturbed buffer zone only covered about 700 square feet. Assuming the Debtor has to replace the area with a four-inch thick cover of soil from the pile (the most requested by the Defendants), that only requires using 233 cubic feet of material (or about 25.9 cubic yards).[7] On

---

[7] Calculated as follows:
700 square feet x 4 inches ÷ 12 inches per foot = 233 cubic feet
233 cubic feet ÷ 9 cubic feet per cubic yard = 25.9 cubic yards.

the other hand, the Defendants also point to Lynch's cost estimate[8] and Basso's testimony that about 360 to 390 cubic yards would be necessary to cover a disturbed area of about 39,000 square feet, assuming a three-inch thick cover of soil from the pile. The Defendants' evidence established, however, that the pile was no more than 1,850 cubic yards, still leaving a substantial amount left over. Thus, the remaining portion of the pile (even at its lowest estimate for volume and fair market value) has some value or benefit to the estate. Accordingly, the exception in § 542(a) does not apply.[9]

### 2. Violation of the automatic stay under § 362(a)(3)

Count II of Total Pride's complaint alleges that the Defendants violated the automatic stay by "exercis[ing] control over property of the estate" under § 362(a)(3). Total Pride alleges that it demanded that the Defendants return the compost pile both before and after the petition date.

Courts uniformly recognize that the scope of the automatic stay provisions are very broad. See, e.g., Soto v. Lanoue (In re Soto), 302 B.R. 757, 759 (Bankr. D.N.H. 2003). As such, the automatic stay is one of the fundamental protections that the Bankruptcy Code affords to debtors. Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 398 (1st Cir. 2002). Acts to take possession or to exercise control over property of the estate violate the automatic stay under § 362(a)(3). See, e.g., Krystal Cadillac Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp. (In re Krystal Cadillac Oldsmobile GMC Truck, Inc.), 142 F.3d 631, 637-38 (3d Cir.

---

[8] Def.'s Ex. 105.

[9] The Defendants also make a brief argument that Total Pride abandoned the pile under RSA § 540-A:3, VII, when it vacated the Fleet Ready property and that Total Pride never gave the Defendants new consideration for using Continental's property. The Defendants did not present any evidence at trial in support of this claim; therefore, they waive it.

1998) (franchisor's actions in objecting to chapter 11 trustee's motions to assume and assign lease and plan of organization were acts to take possession or exercise control over franchise agreement that was an asset of the estate).  And "[t]he failure of an entity in possession of estate property to turn over the property to" the trustee or debtor-in-possession violates § 362(a)(3).  3 Collier on Bankruptcy ¶ 362.03[5], 362-20.

Here, Total Pride demanded that the Defendants turn over the compost pile, or provide him with access to remove it, and they refused.  That refusal constitutes an act to exercise control over property of the estate.  Accordingly, the Court finds that the Defendants violated § 362(a)(3) when they refused to allow Total Pride or Landry to remove the pile.

Total Pride seeks attorney's fees, costs, and actual and punitive damages for having to deal with the Defendants' automatic stay violation.  Section 362(k)(1) allows an individual to recover damages, costs and attorneys' fees, and in appropriate circumstances punitive damages for willful stay violations.  A willful violation does not require a specific intent to violate the automatic stay—it only requires knowledge of the stay and that the defendant intended the actions which constitute the violation.  Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1994).  And a good faith belief in a right to the property is irrelevant to willfulness.  Id. at 268-69.

Courts are split over whether a corporate debtor may take advantage of § 362, which allows recovery for actual damages, including costs and attorneys' fees, and punitive damages in appropriate cases, for "willful" violations of the stay.  Compare Mar. Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.), 920 F.2d 183 (2d Cir. 1993) (damages under § 362 only available to natural persons) with Budget Service Co. v. Better Homes of Virginia, Inc.,

11

804 F.2d 289 (4th Cir. 1986) (damages under § 362 allowed for corporate debtors). But the Court need not decide the issue because the Debtor did not present sufficient evidence of damages at trial. Landry claims that the Defendants prevented him from removing the loam and fulfilling a contract with a customer, Pro Con, causing a loss of $8,800.00. But the submitted invoice shows a sale to Pro Con for 2,200 yards of loam in early May 2005, more than three years before this adversary was filed. Landry also testified that in the spring of 2009, he had to buy comparable material from third parties at a higher price (about $10.00 to $15.00 more per yard) because he could not get access to the pile on the Defendants' property. But he could not say how much material he had to buy, only that it was "thousands of yards." No other evidence or testimony at trial provides sufficient evidence to support any damages for the Defendants' stay violation.

The debtor has the burden to prove by a preponderance of the evidence that he suffered damages from the stay violation. <u>Heghmann v. Indorf (In re Heghmann)</u>, 316 B.R. 395, 404-05 (B.A.P. 1st Cir. 2004); <u>Duby v. United States Dept. of Agriculture (In re Duby)</u>, 2010 BNH 009, at 7. "A damages award cannot be based on mere speculation, guess or conjecture." <u>Heghmann</u>, 316 B.R. at 405. Thus, the Court will not award any actual damages to the Debtor under § 362(k). Punitive damages are also at the court's discretion. <u>Id.</u> The Court declines to impose punitive damages here as those are usually appropriate only for particularly egregious, vindictive, or intentional misconduct. <u>Id.</u> at 405-06.

### B. The Defendants' counterclaims

#### 1. Timber trespass

The Defendants seek statutory damages against Total Pride under the New Hampshire timber trespass statute, RSA § 227-J:8, and compensatory damages for the cost of restoring the disturbed land for Landry's conduct in clearing a path when he tried to access the loam pile on the Defendants' property. The timber trespass statute provides that:

> I. No person shall negligently cut, fell, destroy, injure, or carry away any tree, timber, log, wood, pole, underwood, or bark which is on the land of another person, or aid in such actions without the permission of that person or the person's agent.
>
> II. In addition to any other civil or criminal penalty allowed by law, any person who violates the provisions in paragraph I shall forfeit to the person injured no less than 3 and not more than 10 times the market value of every such tree, timber, log, lumber, wood, pole, underwood, or bark cut, felled, destroyed, injured, or carried away.

RSA § 227-J:8. The penalty provided in the statute "is intended to protect trees as a marketable resource." Motion Motors, Inc. v. Berwick, 150 N.H. 771, 774 (2004). The statute has two criteria to qualify for damages: (1) the timber must have been situated on the land of another person, and (2) the person bringing the action must have been the person injured. Id.

### a. Statutory damages

In assessing statutory damages under RSA 227-J:8, the New Hampshire Supreme Court has recognized that "[n]o guidance is provided on the face of the statute concerning the factors to be considered in selecting the appropriate statutory multiplier," such as whether the defendant's conduct was willful, knowing, or negligent. Berliner v. Clukay, 150 N.H. 80, 82 (2003). Courts are presumably then left with their own discretion.

The record supports a finding that Landry committed a trespass by intentionally going on to another's land, and that he did so without the Defendants' permission. Though the parties attempted to settle the case, they never came to a definitive agreement on how Landry would

remove the loam pile before Landry went on to the Defendants' land without consent. In addition, neither party disputes that the Defendants are the persons injured. Both parties spent considerable energy, however, trying to establish whether the destroyed trees were on the Bel-Mor property or on the Defendants' property, and the value of those trees.

After reviewing the evidence and considering the testimony, the Court finds that the destroyed trees were on the Bel-Mor property and any trees on the Defendants' property that might have been destroyed are of de minimus value. The testimony at trial from both the Defendants and Total Pride establishes that only a handful of trees were involved, one six to eight inches in diameter and others between two to three inches. Those trees were on the Bel-Mor property, though some of them apparently fell onto the Continental property. The Defendants also could not produce any witnesses to the April 30, 2009 incident to prove that Landry cut down trees standing on the Continental property. The Court therefore declines to award statutory damages to the Defendants under RSA 227-J:8

### b. Compensatory damages

The Defendants also seek compensatory damages for the cost of restoring portions of the Continental property that were either disturbed by Landry or that could cause erosion on the Continental property from runoff because of Landry's work on the Bel-Mor property. The Defendants cite Hynes v. Whitehouse, 120 N.H. 417 (1980) in support of their compensatory damages claim. Hynes relied on an older version of the timber trespass statute, RSA 539:1, which has since been repealed. RSA chapter 227-J replaced those sections of RSA chapter 539 "relating to forestry, pursuant to a comprehensive recodification of all existing forestry laws into one chapter." McNamara v. Moses, 146 N.H. 729, 734 (2001) (quoting N.H.H.R. Jour. 447

(1995)).  While RSA 539:1 has been repealed, the penalty provided in RSA 227-J:8 protects the same interests—protecting trees as marketable commodities.  Cases under RSA 539:1 recognized that the statutory penalty provided by the timber trespass statute normally would fully compensate the plaintiff for its loss.  Woodburn v. Chapman, 116 N.H. 503, 505 (1976).  However, "where a tree confers other benefits on the plaintiff in the enjoyment of his property, he may join a count for compensatory damages with his count to recover the statutory penalty."  Id.  The normal measure of damages in these circumstances is the difference between the value of the land before the harm and the value after the harm, or, at the plaintiff's election, the cost of restoration.  See Restatement (Second) of Torts § 929 (cited in Woodburn).

Here, the Defendants produced evidence for restoration costs for the disturbed area on the Bel-Mor property to prevent runoff and erosion on to the Continental property.[10]  The Court finds those costs appropriate in these circumstances.  Accordingly, the Defendants will be awarded $752.00 in restoration costs.

### 2. Compensation for custodian or rental value

The Defendants alternatively ask for $500.00 per month as reasonable compensation for serving as the custodian of the loam pile based on 11 U.S.C. § 543(c)(2).  Because the Defendants never claimed to be a custodian under § 543(c)(2), and they would not be considered one in any event, the Court declines to award the $500.00 monthly compensation.  See 11 U.S.C. 101(11) (defining "custodian").  To the extent the Defendants seek $500.00 per month for the rental value of Continental's property used by Landry, they failed to provide sufficient evidence to establish that value.

---

[10] Def.'s Ex. 105.

## IV.  CONCLUSION

For the reasons discussed above the Court finds that: (1) the loam pile is property of the estate, subject to turnover under § 542(a), and has some value or benefit to the estate; and (2) the Defendants violated the automatic stay under § 362(a)(3) by exercising possession or control over the loam pile when they refused to turn the pile over to Total Pride or to provide access for its removal.  However, the Court will not award any damages for violating the automatic stay because Total Pride failed to provide sufficient evidence.  Lastly, the Defendants' claim for statutory damages for timber trespass fails because evidence shows that the destroyed trees were not on the Continental property, but the Defendants are entitled to compensatory damages for restoration costs based on any disturbed Bel-Mor land that might produce runoff or erosion onto the Continental property.

Based upon those findings, the Court will issue an order regarding the removal of the loam pile and the costs for restoration.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with that order and this opinion.

ENTERED at Manchester, New Hampshire.


Date:   March 15, 2010                         /s/ J. Michael Deasy
                                               J. Michael Deasy
                                               Bankruptcy Judge